915 So.2d 1042 (2005)
SOUTHERN MARINE SALES, INC.
v.
Roger V. and Barbara B. MATHERNE.
No. 05-CA-181.
Court of Appeal of Louisiana, Fifth Circuit.
November 29, 2005.
Rehearing Denied December 21, 2005.
*1043 Timothy S. Marcel, Attorney at Law, Luling, LA, for Appellant, Southern Marine Sales, Inc.
Michael H. Pinkerton, Attorney at Law, New Orleans, LA, for Appellees, Roger V. Matherne and Barbara B. Matherne.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
SUSAN M. CHEHARDY, Judge.
In this lawsuit arising out of a commercial lease dispute, the trial judge granted the Mathernes' Motion for Summary Judgment on their Reconventional Demand and awarded judgment in favor of the Mathernes and against Southern Marine Sales("SMS"). For the reasons that follow, we amend in part and affirm as amended.

Facts and Procedural History
On July 1, 2003, the Mathernes, as lessors, entered into a commercial property lease with SMS, as lessees. According to the lease, the original term began on March 1, 2002 and ended on February 28, 2005.[1] In addition to paying rent and performing other obligations as lessee, SMS agreed to pay "all taxes assessed against *1044 the Property including, but not limited to, advalorem[sic] taxes."[2]
On December 30, 2002, the Mathernes paid ad valorem taxes, totaling $4,190.00, assessed against the Premises for 2002. On December 30, 2003, the Mathernes again paid ad valorem taxes, totaling $4,832.43, assessed against the Premises for 2003.
On March 16, 2004, the Mathernes forwarded copies of the pertinent tax bills to SMS's representative and requested, in writing, reimbursement of amounts paid. On April 2, 2004, Harold Perilloux, SMS's representative, refused, in writing, to tender the monies on the basis that the Mathernes and SMS were in a dispute over "various other items of money due to and from the parties" totaling "significantly more than the 2002 and 2003 property taxes," which makes it "clearly inequitable for Southern Marine to make payment for the taxes at this time." On April 21, 2004, the Mathernes again demanded reimbursement and notified SMS, in writing, of its default for failure to perform a condition of the lease.
On May 3, 2004, SMS instituted a concursus proceeding, seeking to deposit $9,743.33 (the amount of the two tax bills in question), into the registry of the Court. The trial judge refused to allow SMS to deposit the funds and ordered the matter to proceed as an ordinary proceeding. On May 14, 2004, SMS tendered a check in the amount of $9,743.33 to the Mathernes. The Mathernes returned the check to SMS on May 25, 2004.
On May 26, 2004, the Mathernes filed an answer to SMS's petition, including numerous affirmative defenses, and a reconventional demand alleging breach of the lease contract. In their reconventional demand, the Mathernes sought to accelerate the full amount of rental payments due under the term of the lease, sought judgment declaring that SMS, as a defaulter, could not exercise any options to renew the lease, and sought costs and attorneys' fees.[3] On June 1, 2004, SMS answered the Mathernes' reconventional demand and filed their own reconventional and third party demands.
On September 2, 2004, the Mathernes moved for summary judgment on their reconventional demand. The Mathernes attached supporting affidavits and documents, including a copy of the lease in question, to their Motion for Summary Judgment. SMS opposed summary judgment of the Mathernes' reconventional demand on the grounds that the Mathernes breached the lease contract by failing to submit the tax bills in question to SMS for review before paying the bills. SMS also argued that dissolution of the lease was a harsh remedy that is not favored under Louisiana law.
On October 12, 2004, the trial court heard and granted the Mathernes' Motion *1045 for Summary Judgment. On November 8, 2004, the Mathernes filed a Motion to Tax Court Costs and for Attorney's Fees. On December 20, 2004, the trial judge awarded attorneys' fees of $1,500.00, finding that the Mathernes were not entitled to recover any fees after May 17, 2004, the date that SMS tendered payment for the taxes.
SMS now appeals the grant of the Mathernes' Motion for Summary Judgment. The Mathernes have answered the appeal, seeking an increase in attorney's fees for both trial and appellate work, and judicial interest on the amounts owed.

Analysis

Defendant-in-reconvention/appellant's assignment of error
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Bua v. Dressel, 96-79 (La.App. 5 Cir. 5/28/96), 675 So.2d 1191, writ denied, 96-1598 (La.9/27/96), 679 So.2d 1348 (citing Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180).
Summary judgments are now favored, and the documents submitted by both parties are to be equally scrutinized.... The initial burden remains with the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2). If the non-moving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La. C.C.P. arts. 966 and 967.
Premier Restaurants, Inc. v. Kenner Plaza Shopping Center, L.L.C., 99-1310 (La.App. 5 Cir. 8/29/00), 767 So.2d 927, 932, quoting Davis v. Specialty Diving, Inc., 98-0458 (La.App. 1 Cir. 4/1/99), 740 So.2d 666, 669, writ denied 99-1852 (La.10/8/99), 750 So.2d 972. See also Cochran v. Safeguard Self-Storage, Inc., 02-1272 La.App. 5 Cir. 4/29/03, 845 So.2d 1128.
On appeal, SMS, in its only assignment of error, argues that the "trial court erred in granting summary judgment terminating the lease contract based upon the actions alleged by the lessors." Specifically, SMS contends that their failure to timely tender property tax reimbursement was not a `material breach' of the lease contract and, thus, did not warrant `dissolution' of the contract. SMS further contends that `dissolution' of the lease "significantly impairs" their interest since the right to occupy and conduct business at the leased premises for up to 12 years was a primary incentive for SMS to enter into the lease agreement. Finally, SMS argues that there are genuine issues of material fact present that render this matter inappropriate for summary judgment.
First, we must point out SMS mischaracterizes the trial court's ruling as a `dissolution' of the lease. The Louisiana Supreme Court in Richard v. Broussard, 495 So.2d 1291, 1293 (La.1986), explained:
Generally, when a lessee defaults on a lease agreement, the lessor has two options available: he may sue to cancel the lease and to recover accrued rentals due, or he may sue to enforce the lease and to recover both accrued rentals and future accelerated rentals (if the lease contains an acceleration clause). These remedies are mutually exclusive. If the lessor elects to cancel the lease, the lease is terminated and the lessor is entitled to return into possession, but he forfeits the right to all future rentals. On the other hand, if the lessor elects to enforce the lease, he may obtain a money *1046 judgment against the lessee based on the terms of the lease agreement, but the lease remains in effect and the lessee retains the right of occupancy for the remainder of the term of the lease. (Citations omitted).
According to the record, the Mathernes sought, among other things, acceleration of the remaining rent due under the term of the lease and, thus, sought to enforce, not dissolve the lease.[4] The trial judge found that SMS defaulted in performance of a condition of the lease by failing to pay the ad valorem taxes and granted relief to the Mathernes by enforcing the lease and accelerating the full amount of rent due under the contract. The trial judge's ruling allowed SMS to remain in possession of the leased premises for the duration of the original term of the lease, which would not have been the case if the lease had been `dissolved' or cancelled.
Further, SMS argues that the trial judge erroneously ruled that SMS cannot exercise its option to renew the lease for nine more years because the ruling "significantly impairs" their interest.[5] Again, the lease contract between the parties specifically reads that SMS shall have the option to renew the lease for "three (3) additional terms of three (3) years each" if SMS is not in default in the performance of this lease. As noted above, the trial judge found SMS defaulted in performance of the lease and, thus, we find no legal error in the trial court's ruling that SMS cannot exercise the option to renew.
Finally, SMS asserts, in its brief, that there are genuine issues of material fact that would render summary judgment inappropriate in this case. In support, SMS argues that "the determination of whether the actions of SMS constitute either a material or technical violation of the Lease Contract requires an inquiry into the subjective intent and motives of the parties." In this case, the Mathernes' Motion for Summary Judgment was accompanied by, inter alia, an affidavit from Roger Matherne and attached copy of the Commercial Lease, certified copies of the tax bills and receipts for payment, and a copy of the demand letter. The record discloses only SMS' Supplemental Memorandum in Opposition to Summary Judgment, which does not include any attachments.
At the close of the hearing on the Mathernes' Motion for Summary Judgment on October 12, 2004,[6] the trial judge stated:

*1047 In Louisiana, the law of lease is well settled and has been settled for decades. It's not that complicated an area of the law. The lease is an agreement between the parties and the Court construes it accordingly.
* * *
Everything that has been presented to the Court shows that there is no genuine issue of material fact as to the fact of the default. The ... Court finds that Southern Marine tried to gain the upper hand by depositing [funds] into the registry of the Court and satisfying it's obligations under the lease in that way. The lease doesn't allow that. It doesn't call for that. It didn't contemplate that. It called for payment to the lessor, it wasn't done. Period, the end. The Court finds that there is no genuine issue of material fact that the lessee, Southern Marine Sales, is in default of the lease by non-payment of the tax after demand by the lessor. Therefore, the Court finds that the lease was breached and will grant the Summary Judgment, in that the Court will accelerate payment of the rents due and owing through February of 2005 and will declare what[sic] the terms of the lease in so far as allowing for successive three year options are of no moment. And the lessor is entitled to [have those declared] null and void and not honor those aspects of the lease.
In this case, we find that documents presented by the Mathernes show that there is no genuine issue of material fact regarding whether SMS breached the lease agreement in question. Further, SMS did not produce adequate documentation setting forth specific details that would indicate an issue of fact exists. We conclude, therefore, that summary judgment was appropriate in this case. Therefore, we affirm the trial court's ruling granting summary judgment in favor of the Mathernes.

Plaintiffs-in-reconvention/appellees' assignments of error
On appeal, the Mathernes raise three assignments of error: first, the district court erred in failing to award the Mathernes legal interest on the amounts they are owed; second, the district court erred in failing to award only $1,500.00 in attorney's fees; and third, whether the Mathernes are entitled to increased attorney's fees, under the prevailing party clause in the lease in question, for the additional work necessitated by this appeal.

Legal Interest
The Mathernes claim that the trial court erred in failing to award judicial interest in this case. SMS responds that the Mathernes were not awarded interest because they did not pray for interest in their reconventional demand.
La. C.C.P. Art. 1921 reads:
The court shall award interest in the judgment as prayed for or as provided by law.
In this case, the judgment is silent with respect to interest. It is well settled that where a judgment is silent as to any part of a demand or any issue that was litigated, that demand is deemed rejected. Mooers v. Sosa, 01-286 (La.App. 5 Cir. 9/25/01), 798 So.2d 200; Talbot v. C & C Millworks, Inc., 97-1489 (La.App. 1 Cir. 6/29/98), 715 So.2d 153, 155.
Further, our review of the Mathernes' reconventional demand reveals that their prayer for relief requested "all equitable relief to which they are otherwise entitled." La. C.C. art. 2000 reads:
When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, *1048 at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more. If the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee's attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well.
The law is clear that legal interest is recoverable on debts arising ex contractu from the time they become due, unless otherwise stipulated. La. C.C. art. 2000; Rivnor Properties v. Herbert O'Donnell, Inc., 633 So.2d 735, 749 (La.App. 5 Cir. 1/12/94). In Alexander v. Burroughs Corp., 359 So.2d 607, 613 (La.1978), the Supreme Court stated:
One of the incidents of the obligations of contracts is that the one who violates those obligations is liable for damages "which the other party has sustained by his default." La. C.C. art. 1930 [now C.C. art. 1994]. Damages are due "from the moment" of an active violation of a contract (La. C.C. art. 1932 [now C.C. art. 2015]) and from "the time that the debtor has been put in default" when the breach has been passive. La. C.C. art. 1933 [now C.C. art. 1989]. A debtor may be put in default "either by the commencement of a suit, by a demand in writing ...." or in other ways. La. C.C. art. 1911 [now C.C. art. 1991]. The damages due for delay in the performance of an obligation to pay money are called interest. La. C.C. art. 1935 [now C.C. art. 2000].
In this case, the lease contract reflects that the lessee, SMS, was to pay taxes assessed against the premises. According to the record, the Mathernes demanded reimbursement for tax payments in writing on March 16, 2004. The Mathernes put SMS in default in writing on April 21, 2004.
Although the trial judge held that SMS defaulted on the lease and awarded the Mathernes reimbursement of past due taxes and acceleration of rents due, the trial court did not award interest on the judgment. We find that the trial judge erred in failing to award judicial interest from the date of judicial demand. Accordingly, we amend the judgment to award judicial interest to the Mathernes at the rate provided by R.S. 9:3500 from the date of judicial demand until the judgment is paid.

Attorney's fees
A reasonable attorney's fee is determined by the facts of an individual case. Gottsegen v. Diagnostic Imaging Services, 95-977 (La.App. 5 Cir. 3/13/96), 672 So.2d 940, 943. In making awards for attorney's fees, the trial court is vested with great discretion, the exercise of which will not be interfered with except in a case of clear abuse. Id.
In this case, paragraph 16 of the Commercial Lease between the parties, which is entitled Attorney's Fees, reads: "In case suit should be brought ... for any sum due hereunder, or because of any act which may arise out of the possession of the Premises, by either party, the prevailing party shall be entitled to all costs incurred in connections with such action, including a reasonable attorney's fee."
At the hearing to set attorney's fees, the trial judge awarded attorney's fees totaling $1,500.00. At that point, the Mathernes had already put SMS in default in performance of the lease and SMS had attempted to institute a concursus proceeding. In his Reasons for Judgment, the trial judge stated:

*1049 The concern of this Court, however, is the amount of attorney's fees sought to be recovered herein. Basically, the mover is asking that all of their attorney's fees be assessed against Southern Marine since they prevailed on their motion for summary judgment. Southern Marine is objecting to the same. Southern Marine argues that the underlying claim of the Mathernes (non-payment of property taxes) should have been made moot by their tendering same to the Mathernes on May 17, 2004. (Southern Marine notes that, as of that date, only $915.00 in attorney's fees had been incurred by the Mathernes in this matter.)
The Court has to use an element of reason in interpretation of lease contracts. To say that the "losing party" would have to pay all of the attorney's fees incurred by the opposing party, regardless of the amount claimed and regardless of their reasonableness, would, in this Court's opinion, lead to absurd results.
In the instant case, the main complaint of the Mathernes against Southern Marine (non-payment of taxes) was remedied by the tendering of same in May, 2004. Most of the fees incurred beyond that date were incurred in pursuing other claims against Southern (which were ostensibly triggered by non-payment of taxes by Southern.)[sic]
The Court can't disagree with the argument advanced by Southern. To award the Mathernes all additional fees incurred beyond the date of tender would, in this Court's opinion, effectively be giving one party an "open checkbook" in pursuing the other party. The Court does not think this is reasonable; the Court does not think this was the intent of the parties.
Accordingly, the Court will award attorneys[sic] fees through the date of tendering of the amounts owed by Southern (May, 2004), along with reasonable attorney's fees in drafting judgments and in drafting the instant rule. All things considered, the Court will fix the total amount of attorney's fees herein at $1,500.00.
After reviewing the entire record before us, we find that the trial judge's award of $1,500.00 for attorney's fees in this case is unreasonably low and increase the award to $6,500.00. In so finding, we have considered the entire record, including the discovery contained therein, the numerous pre-trial motions, the legal issues involved, and trial and appellate work involved in this matter.
Therefore, for the foregoing reasons, the judgment of the trial court with respect to the grant of the Matherne's Motion for Summary Judgment is affirmed. The trial court judgment is amended to award judicial interest on the judgment from the date of judicial demand and $6,500.00 for attorney's fees. Costs of this appeal are assessed against appellant, Southern Marine Sales.
AMENDED AND, AS AMENDED, AFFIRMED AND RENDERED.
NOTES
[1] It is undisputed that SMS took over commercial operations of the property on or about March 1, 2002, even though the lease was not confected until July 1, 2003.
[2] Paragraph 15 of the Commercial Lease at issue reads:

Taxes. Lessee shall be responsible for all taxes assessed against the Premises including, but not limited to, advalorem[sic] taxes. Upon receipt of a tax bill, Lessor shall forward it to Lessee for his review prior to payment so that any inaccuracies can be corrected. After Lessee has a reasonable opportunity to review the tax bill and make any appropriate corrections, Lessor shall pay the bill in a timely fashion so no delinquency charges are incurred. Lessee shall reimburse Lessor for the amount paid, which reimbursement shall be made at the time the next monthly rental payment is made.
[3] On June 15, 2004, the Mathernes filed an Exception of No Cause of Action, and alternatively, Motion for Summary Judgment on SMS's concursus proceeding, which was granted on September 27, 2004.
[4] Paragraph 13 of the parties' lease reads:

Lessor's Remedies on Default. If Lessee defaults in the payment of rent, or any additional rent, or defaults in the performance of any of the other covenants or conditions hereof, Lessor may give Lessee notice of such default and if Lessee does not cure any such default within ten (10) days after the giving of such notice ..., then Lessor may: (1) terminate the lease on not less than ten (10) days' notice to Lessee. On the date specified in such notice, the term of this lease shall terminate, and Lessee shall have been so terminated by Lessor, Lessor may at any time thereafter resume possession of the Premises by any lawful means and remove Lessee or other occupants and their effects; (2) sue Lessee from time to time for monthly rent and other amounts due, as they accrue; or (3) accelerate the full amount due under the term then in effect. In addition to any one of the above, Lessor may exercise any other rights available to Lessor under Louisiana law. (Emphasis added).
[5] Paragraph 20 of the lease in question reads in part:

Option to Renew. Provided that Lessee is not in default in the performance of this lease, Lessee shall have the option to renew the lease for three (3) additional terms of three (3) years each.
[6] On November 16, 2004, the trial judge signed a judgment to that effect.